## GODDARD *vs.* BOLSTER & *al.*

The agent of the owner of a grist-mill having inserted into it his own mill-stones and mill-irons; it was *held* that they became thereby the property of the owner of the mill, as part of his freehold, so that the agent could not lawfully sever them again; nor could his creditors seize them for his debt, though the mill had been destroyed by a flood, and they alone remained.

If the plaintiff in trespass *quare clausum fregit* die after verdict in his favor, and before judgment, the court will enter judgment as of the term in which the verdict was returned.

THIS was an action of trespass *quare clausum fregit*, for entering the plaintiff's lands in *Andover*, cutting down his grass, and taking and carrying away his mill-stones and mill-irons.

At the trial before *Weston J.* it appeared that the plaintiff, who was an inhabitant of Massachusetts, purchased, some twenty years ago, the farm in question, for the avowed purpose of affording a home and subsistence, during life, to his brother *Robert*, who was in embarrassed circumstances. *Robert* entered and occupied the premises ever after, sometimes calling the farm his own, paying the taxes, which were assessed in his name, and cutting and sawing the timber at his pleasure. At the time of the purchase, a grist-mill was standing on the premises; which being afterwards burnt, *Robert* rebuilt it, with the gratuitous aid of some of his townsmen, inserting into it the mill-stones and mill-irons in question, which had belonged to a mill of his own in *Bethel*, which was destroyed by a freshet. *Robert* occupied this new mill as his own for ten or fourteen years, taking the profits to his own use, till it was swept off by a freshet in 1819 or 1820; immediately after which he took the mill-stones and irons out of the river, and deposited them at the side of the highway on the farm, offering them for sale, and disposing of part of them; where they remained till the defendants, who were judgment creditors of *Robert*, caused them to be taken and sold, to satisfy their execution. In all these transactions *Robert* acted under a contract with the plaintiff, as his agent; and there was no evidence tending to

fix on the plaintiff the imputation of fraud, or to create a doubt but that his motive was solely to assist and relieve his brother.

Upon this evidence the judge instructed the jury that the grist-mill, when rebuilt, became the property of the plaintiff, who would be holden to account to *Robert* for the value of any materials or labor furnished by him ; and that it being the property of the plaintiff in its entire state, the parts and fragments, after it was broken, continued to be his property. The jury hereupon returned a verdict for the plaintiff, for the value of the mill-stones and irons ; which was taken subject to the opinion of the court upon the correctness of the judge's instructions.

*Fessenden,* for the plaintiff, at the opening of the argument at this term, suggested that the plaintiff had died since the verdict was returned ; and he moved for judgment *nunc pro tunc* ; observing that the court had power to do this, by the common law, as well before as after a *curia advisare vult.* And to the principal question raised at the trial, he cited *Elwes v. Maw,* 3 *East* 38 ; 3 *Dane's Abr.* 145 ; *Lifford's case,* 11 *Co.* 46 ; 6 *Mod.* 187 ; *Penton v. Robarts,* 2 *East* 88 ; 1 *Salk.* 368 ; *Farrar v. Stackpole, ante p.* 154 ; *Goddard v. Chase,* 7 *Mass.* 432 ; *Union Bank v. Emerson,* 15 *Mass.* 159.

*N. Emery* and *Virgin,* for the defendants, contended that the severance of the stones and irons from the mill was not temporary, and for re-insertion ; but for a final separation. If the debtor, as agent for the plaintiff, had put his own machinery into the mill, he had in the same character taken it away, and treated it as his own. The articles, therefore, not belonging to the soil, might well be seized and sold by creditors. *Simpson v. Hartop, Willes,* 516 ; 9 *Dane's Abr.* 273 ; *Ricker v. Kelly,* 1 *Greenl.* 117 ; *Pyne v. Dorr,* 1 *D. & E.* 55 ; *Van Ness v. Packard,* 2 *Pet.* 143.

MELLEN C. J. delivered the opinion of the Court.

In this case it appears by the contract referred to in the report that *Robert Goddard,* in the purchase of the farm and in the possession and superintendence of it, acted as the agent of the plain-

tiff; and the case shows that his object in the purchase of the farm was to assist his brother *Robert*, by permitting him to occupy the same and have the profits as long as he lived. As the mill on the premises essentially added to those profits, when it was burnt, it was for the interest of *Robert*, when the new mill was erected, that it should be made capable of operation ; and he therefore took his own mill-stones and mill-irons from *Bethel*, which were then useless, and placed them in the new mill, where they remained until the mill was carried away by a freshet, when they were taken out ; after which they were attached. To carry the designs of the plaintiff into execution, the above measure was necessary, or at least expedient, and for the immediate use and advantage of *Robert*. As agent of the plaintiff, he must be considered as having annexed the mill-stones and mill-irons to the estate of the plaintiff, whereby they became a part of the freehold ; and, of course, *Robert* had no right to disannex them ; and though he removed them into the road after the destruction of the mill, that act did not change the property ; they, as well as the mill at the time it was swept away, were the property of the plaintiff. In our opinion the instruction of the judge was correct. Besides, the plaintiff by bringing this action has ratified the acts of *Robert* in rebuilding the mill, after the former one was consumed, and in putting the same into operation by the means and in the manner before mentioned.

And it would seem that we should arrive at the same result, if *Robert* had no permission, express or implied, to place the mill-stones and mill-irons in the plaintiff's mill ; for if a man of his own accord, and without any authority, builds on another's land, the building becomes his property, as being attached to his freehold. The exceptions to this principle are found in case of erections by lessees for the purposes of trade. The case at bar, however, presents no facts which appear to bring it within the range of the principle above mentioned. The sole object of *Robert* was to continue the farm and means of income in the same situation as when he entered into possession of it, and without any intention of removing any additions he had made ; expecting, as he did, to continue the occupa-

Porter v. Griswold.

tion of the farm and enjoyment of its profits in all respects, during his life. There must be *Judgment on the verdict.*